NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SEAN B., | |
| Plaintiff, | |
| v. | Civil Action No. 24-10922 (RK) |
| COMMISSIONER OF SOCIAL SECURITY, | **OPINION** |
| Defendant. | |

## KIRSCH, District Judge

**THIS MATTER** comes before the Court on Sean B.'s [1] ("Sean" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner" or "Defendant") final decision, which denied Sean's request for Social Security disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

In this appeal, the Court must decide whether substantial evidence supports Administrative Law Judge Leonard Costa's ("Judge Costa") determination that Sean was not disabled.

### A.    PROCEDURAL POSTURE

Sean filed an application for disability insurance benefits on May 31, 2022. (Administrative Record ("AR") at 17, 134–42.)[2] The Social Security Administration (the "Administration") denied

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

[2] The Administrative Record ("AR") is available at ECF Nos. 4-1 through 4-10. This Opinion will reference

the requests initially (*id.* at 76–80) and after reconsideration (*id.* at 82–85). Sean then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 91.) On December 14, 2023, Sean appeared by telephone at a hearing in front of Judge Costa, wherein Judge Costa heard testimony from Sean, who was represented by counsel, and a vocational expert, Dr. Steven Feinstein ("VE"). (*Id.* at 35–57.) On February 5, 2024, Judge Costa issued a written decision finding that Sean was not disabled. (*Id.* at 17–31.) After receiving notice of Judge Costa's unfavorable decision, Sean requested review by the Appeals Council. (*Id.* at 132–33.) On October 11, 2024, the Appeals Council determined that the reasons asserted by Sean for appeal "do not provide a basis for changing the Administrative Law Judge's decision." (*Id.* at 1.)

This appeal followed. (ECF No. 1.) The Administrative Record was filed on February 3, 2025. (ECF No. 4.) Sean filed a moving brief (ECF No. 5, "Pl. Br."), and the Commissioner responded (ECF No. 7, "Def. Opp."). Sean did not file a reply brief.[3] The appeal is now ripe for review by this Court.

### B.    JUDGE COSTA'S DECISION

On February 5, 2024, Judge Costa issued a decision finding that Sean was not disabled from his alleged onset date of April 10, 2021, through the date of decision. (AR at 17–31.) At the time of the alleged onset date, Plaintiff was forty-one years old, had a twelfth-grade education, and had worked as the manager of a retail music store for nearly seventeen years. (*See id.* at 22–23; *see also id.* at 181–82.) Plaintiff testified that he stopped working because he "built up a tolerance"

---

only page numbers in the Record without the corresponding ECF numbers.

[3] Rule 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) allows a plaintiff to "file a reply brief and serve it on the Commissioner within 14 days after the service of the Commissioner's brief." Since the Commissioner filed the opposition brief on April 1, 2025, Sean's time to file a reply expired on April 15, 2025.

to his Lexapro prescription, no longer felt any therapeutic effects of the medication, and "had [a] manic break from reality" followed by "a very deep depression." (*Id.* at 44.) Since then, Plaintiff testified, he had difficulty concentrating, experienced depression, "had tremors," and eventually "lost focus and all determination." (*Id.*) Plaintiff, who is married (but apparently separated) from his wife and lives primarily with his father, saw a number of medical professionals in the time since his manic episode including Anthony DiMura, PMHNP ("PMHNP DiMura") (from before the alleged onset date through June 15, 2022), Emily Balint, PA ("PA Balint") (from August 9, 2022 through October 24, 2023), Dr. Christopher Williamson, Psy.D (on January 3, 2023), and Dr. Betty Vekhnis, M.D. (on January 24, 2023). (*See id.* at 24–27.) Although no party disputes that Sean has experienced a series of mental health setbacks in the last number of years, the extent of his condition's lasting impact on his ability to work were the primary focus of Judge Costa's inquiry and analysis.

In reaching the determination that Sean was not disabled, Judge Costa applied the five-step process for determining whether an individual is disabled as set forth in 20 C.F.R. § 404.1520(a). (AR at 18.) At Step One, Judge Costa found that Sean had not engaged in substantial gainful activity since the alleged onset date, April 10, 2021.[4] (*Id.* at 19 (citing 20 C.F.R. § 404.1571 *et seq.*).) At Step Two, Judge Costa found that Sean suffered from two severe impairments: (1) bipolar disorder, and (2) generalized anxiety disorder. (*Id.* (citing 20 C.F.R. § 404.1520(c)).) The ALJ did not analyze any additional impairments.

At Step Three—which Plaintiff contests here—Judge Costa determined that Sean did not have "an impairment or combination of impairments" that qualified under the Administration's

---

[4] While Sean *did* earn $134 in the first quarter of 2022 after working for two days at a warehouse (AR at 19), this amount does not meet the regulatory threshold for substantial gainful activity. *See* 20 C.F.R. § 404.1574(b).

3

listed impairments. (*Id.* at 20–22 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) Specifically, Judge Costa considered the criteria of listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). (*Id.*) Judge Costa explained that in order to find that Sean met the listings criteria, he would need to determine that Sean had one "extreme" limitation or two "marked" limitations across the four "paragraph B" categories:[5] (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.* at 20–21.) For each of the four categories, Judge Costa determined that Sean had only a "moderate" limitation—not an extreme or marked limitation—and therefore the Paragraph B criteria were not satisfied, and the listings were not met. (*Id.* at 20–22); *see Ortiz v. Colvin*, No. 14-4805, 2016 WL 164995, at *2 (D.N.J. Jan. 14, 2016) ("A marked limitation is more than moderate, but less than extreme.").

**Understanding, Remembering or Applying Information**. Judge Costa found that Sean had only a moderate limitation because, although Sean reported that he had problems with memory and following instructions, mental status examinations showed that he could complete addition and subtraction calculations; could recall 3/3 objects at 5- and 10-minute intervals; was oriented to time, place, person, and recent current events; presented as alert and awake; could name the capitals of the United States and New Jersey; identified past and future holidays; described his meals; and interpreted proverbs in an abstract way. (*Id.* at 20 (citing *id.* at 200, 482, 485–86).)

**Interacting with Others.** In finding that Sean had only a moderate limitation in interacting with others, Judge Costa noted Sean's own report that he and his wife "do not get along all the

---

[5] Neither party contests the fact that Judge Costa made no explicit Paragraph A findings, and determined that "the evidence fails to establish the presence of the 'paragraph C' criteria." (AR at 21.)

time" and that he primarily spends time alone at his wife's or father's homes. (*Id.* (citing *id.* at 200).) Additionally, as Judge Costa noted, PA Balint observed that Sean appeared "slightly disheveled." (*Id.* (citing *id.* at 470).) Nonetheless, at the same visit, PA Balint found Sean to be "calm and cooperative despite 'mediocre' mood and dysphoric affect." (*Id.* (quoting *id.* at 470).) Judge Costa also accounted for the fact that at a psychological examination, Sean was "cooperative . . . , pleasant, casually dressed and groomed" and "no evidence of psychosis was noted." (*Id.* (citing *id.* at 482.)

**Concentrating, Persisting, or Maintaining Pace.** Judge Costa similarly found that Plaintiff only had a moderate limitation here. Although, as Judge Costa noted, Sean reported that he "could only pay attention for a couple of minutes at a time and does not finish what he starts," (*id.* at 21 (citing *id.* at 200)), his mental status examination revealed "linear and logical thought process with fair attention." (*Id.* (citing *id.* at 470.) Sean was also able to satisfactorily complete a myriad of mental status examinations when evaluated: he could complete simple addition and subtraction calculations; "slowly but accurately" complete serial 7s; repeat up to five digits forward and four digits backward; spell a five-letter word backwards; cite five digits in reverse; correctly state the number of quarters in $1.75; and do multiplications "well." (*Id.* (citing *id.* at 482, 485–86).) State agency consultant Dr. Adalisse Borges found a "moderate" limitation in concentrating, persisting, or maintaining pace, which Judge Costa adopted as consistent with the overall evidentiary record. (*Id.* (citing *id.* at 67).)

**Adapting or Managing Oneself.** In the final category, Judge Costa determined that, here too, Plaintiff had only a moderate limitation. (*Id.*) Judge Costa cited Sean's own Function Report, which stated that he could not handle stress or changes in routine well, he talked to himself and shook uncontrollably, and had difficulty with activities of daily living such as personal care and

meal preparation. (*Id.* (citing *id.* at 196–98, 201).) Sean himself, however, also reported that after he switched to a new medication, Lithium, he experienced increased motivation, less mania, improved mood, less anxiety, and feeling "more like [him]self." (*Id.* (citing *id.* at 500).) Throughout, Sean "consistently" denied any suicidal thoughts, plans, or intent. (*Id.* (citing *id.* at 460).) Indeed, the record was devoid of any hospitalizations due to any psychiatric or psychological conditions at any time. (*See id.* at 24 (Plaintiff reported in August 2022 that he had "no history of psychiatric hospitalizations or suicide attempts"); *id.* at 26 (Plaintiff indicated in January 2023 that "he had never been hospitalized psychiatrically").)

All told, Judge Costa determined that Sean had four "moderate" limitations. (*See id.* at 20–21.) However, he needed either one "extreme" limitation or two "marked" limitations to meet the 12.04 or 12.06 listings. (*See id.* at 21.) Accordingly, Judge Costa found that Sean did not meet either of the listings, and, therefore, that he could not be found disabled at Step Three.

Judge Costa then moved to the precursor to Step Four, where he accounted for Sean's alleged symptoms and determined that the record evidence supported the existence of those symptoms. Specifically, Sean alleged he had work-related limitations due to "bipolar disorder, depression, obsessive-compulsive disorder (OCD), hypertension, attention deficit disorder (ADD) and anxiety." (*Id.* at 22.) Sean further indicated in his November 15, 2022 Function Report that he was unable to concentrate on any task due to ADD, was often unable to get out of bed, had limitations in memory, completing tasks, concentrating and following instructions, was unable to handle stress or changes in routine, often had a hard time sleeping at night (and as a result ended up sleeping during the day), and hardly cooked for himself (but sometimes did household chores like cleaning or laundry). (*Id.* at 23.)

Although Judge Costa found that Sean's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," he also determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 24.)

In so finding, Judge Costa reviewed hundreds of pages of medical evidence spanning multiple years and practitioners. This evidence, according to Judge Costa, demonstrated that Sean did not have disabling limitations. Sean's first provider, PMHNP DiMura, concluded in medical records that Sean's mental status exams were within normal limits, even though Sean was somewhat anxious and/or depressed with a blunted affect. (*Id.* (citing *id.* at 443, 446, 450).) Nonetheless, records from throughout Spring 2022 indicated that Sean had "normal speech, intact memory, good concentration/attention, fair insight, good judgment/impulse control, and intact 'functional status.'" (*Id.* (citing *id.* at 443, 446, 450).)

Judge Costa also cited to records of eight different appointments with PA Balint, from whom Sean sought care after he changed insurance carriers. (*See id.* at 24–27.) As Judge Costa acknowledged, Sean routinely reported symptoms such as of depression, crying, irritability, hopelessness and helplessness, depressed mood, hand tremors, fatigue and needing to take naps during the day, and low energy level. (*See id.* at 24–27) On numerous occasions, however, and especially when he was prescribed higher doses of medication, he experienced a "brighter" mood, felt "a little more upbeat," denied irritability, was described as future oriented, presented a stable mood, had lower anxiety, and stated that he started to "feel like [him]self again." (*Id.* at 25–27 (alteration in original) (citing, *e.g.*, *id.* at 500).) At various examinations, PA Balint found Sean to be "cognitively oriented to person, place, and time/date," with "level" mood, "calm and cooperative" with "good attention, normal memory, fair insight, and fair-good judgment." (*Id.* at

25 (citing *id.* at 456, 459–60, 470).) Notably, in early fall 2022, while Plaintiff was undergoing treatment with PA Balint, Sean's brother died by suicide. (*See id.* at 25 (citing *id.* at 458).) Despite being understandably "sad" when thinking about his brother, Sean's mood reportedly remained "stable." (*Id.* (citing *id.* at 638).)

Records from two more medical professionals rounded out Judge Costa's analysis: *first*, Dr. Christopher Williamson, Psy.D, whom Plaintiff saw for a consultation in January 2023, reported that during a mental status examination Plaintiff was noticeably anxious, tremulous, sad, down, and despondent; but at the same time was also cooperative and pleasant; well-oriented to time, place, person, and current events; showed no evidence of psychosis; and was able to accurately complete a variety of mathematical calculations and memory tests. (*Id.* at 26 (citing *id.* at 481–82).) *Second*, Dr. Betty Vekhnis, M.D., who also evaluated Plaintiff in January 2023, found Sean to be alert, awake, and oriented, and could name capitals and holidays, do multiplication and serial 7s, and correctly state the number of quarters in $1.75. Dr. Vekhnis also observed Plaintiff's right hand fine tremor lasting about one minute and determined that Plaintiff "does not use an assistive device for ambulation, and uses both hands for fine and gross motor manipulations." (*Id.* at 26–27 (citing *id.* at 485–86).)

Based on the record, Judge Costa determined that Sean "has severe mental [medically determinable impairments] of bipolar disorder and anxiety disorder(s), resulting in 'moderate' functional limitations" and held, *inter alia*, that Sean is "limited to simple instructions and decision-making, with only occasional changes to essential job functions." (*Id.* at 28.) "However," Judge Costa explained, "medical evidence indicates that [Sean] is generally stable, with improved symptoms on his current medication regimen, including improved mood, less anxiety, and attending better to [activities of daily living]." (*Id.*) Despite Plaintiff's repeated complaints of hand

tremors, Judge Costa determined that these tremors were "minimally bothersome with no functional issues"—indeed, he could button, write, and zip. (*Id.* (citing *id.* 485.) Judge Costa therefore concluded that Sean had no functional limitations from the tremors. (*Id.* (citing *id.* at 454, 535).)

Judge Costa then proceeded to consider two medical opinions—one by PA Balint and the other by Dr. Adalisse Borges, a state agency consultant. (*See id.* at 28–29.) PA Balint opined that Sean was "seriously limited" or "unable to meet competitive standards" in a variety of mental abilities and aptitudes, but Judge Costa found this opinion to be "not entirely persuasive" because her opinion was not consistent with the evidence of the record. (*Id.* at 29 (quotation omitted) (citing *id.* at 644–49).) As for Dr. Borges, who opined that Sean had only moderate limitations across the Paragraph B criteria and that Sean could understand, remember, and carry out simple instructions despite having limitations with detailed instructions, Judge Costa found the opinion to be "essentially persuasive." (*Id.* at 28 (citing *id.* at 59–62, 64–72).)

Ultimately, Judge Costa determined that Sean had the Residual Functional Capacity ("RFC") to perform work at all physical exertional levels, but with a series of nonexertional limitations:

> The claimant can have no direct contact with the general public, and occasional interaction with co-workers and supervisors, but cannot work in tandem with co-workers, such as on an assembly line; can only perform work where production is measured at the end of the day and not throughout the course of the day; is able to understand, remember and carry out simple instructions, with only occasional changes to essential job functions, and is able to make simple work-related decisions; and the individual would be off-task approximately 10% of the workday.

(*Id.* at 22.)

As a result of this RFC—which Judge Costa developed based on Sean's own testimony and allegations, voluminous objective medical records, and two formal medical opinions—Judge

Costa found at Step Four that Sean was unable to perform his past relevant work of being a retail manager. (*Id.* at 29 (citing 20 C.F.R. § 404.1565).)

Finally, at Step Five, based on the testimony of the VE, Judge Costa found that there are jobs in significant numbers in the national economy that Sean could perform. (*Id.* at 30 (citing 20 C.F.R. §§ 404.1569, 404.1569a).) Specifically, Sean could perform the requirements of occupations such as floor waxer, hand packager, and retail marker. (*Id.*) As a result, Judge Costa found that Sean was not disabled from April 10, 2021 through the date of his decision. (*Id.* at 31 (citing 20 C.F.R. § 404.1520(g)).)

## II.    **LEGAL STANDARD**

### A.    **STANDARD OF REVIEW**

The Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). If the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 633 (3d Cir. 2010) (quoting *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

### B.   ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

A claimant may establish disability under the Social Security Act by proving that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citing 20 C.F.R. §§ 404.1520(a)(4)).

### III.   DISCUSSION

Sean appeals Judge Costa's determination of non-disability. (*See* ECF No. 1.) Plaintiff raises three issues on appeal: *first*, that Judge Costa erred at Step Three by improperly concluding that the Paragraph B criteria were not met for listings 12.04 and 12.06; *second*, that Judge Costa failed to properly evaluate the medical opinions of PA Balint and Dr. Williamson; and *third*, that

Judge Costa relied on the VE's testimony even though it contained inherent inconsistencies. (*See* Pl. Br. at 14–15.) For the reasons set forth below, the Court finds Sean's contentions without merit and holds that the Commissioner's conclusions are supported by substantial evidence.

### A.    PARAGRAPH B LIMITATIONS

Plaintiff contests the ALJ's findings that he did not meet the criteria of listings 12.04 and 12.06. (Pl. Br. at 18.) These two psychiatric listings require that the Paragraph A criteria be met as well as the criteria of either Paragraph B or Paragraph C. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 n.3 (3d Cir. 2007). The focus of Plaintiff's argument is on Paragraph B. (*See* Pl. Br. at 18–21.)

To satisfy Paragraph B, Plaintiff must show an extreme limitation in one of the following, or a marked limitation in two of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. pt. 404, Subpt. P, app. 1, §§ 12.04(B), 12.06(B). ALJs are instructed to employ a five-point rating scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation, to determine the appropriate limitation level.[6] "Marked is not defined by a specific number of

---

[6] The five-point rating scale is further described in the regulations as the following:

   a. *No limitation (or none).* You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

   b. *Mild limitation.* Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

   c. *Moderate limitation.* Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

   d. *Marked limitation.* Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

   e. *Extreme limitation.* You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. pt. 404, Subpt. P, app. 1, § 12.00(F)(2).

different activities of daily living in which functioning is impaired, but by the nature and overall degree of interference with function." *Leese v. Berryhill*, No. 17-1634, 2018 WL 4374230, at *9 (M.D. Pa. June 12, 2018) (citing 20 C.F.R. pt. 404, Subpt. P, app. 1, § 12.00C(1)), *report and recommendation adopted*, 2018 WL 4361596 (M.D. Pa. Sept. 13, 2018). Thus, there is no standard quantitative distinction between a moderate limitation and a marked limitation.

Here, Judge Costa determined that Plaintiff did not meet either the 12.04 or 12.06 listings because he had only moderate limitations—not marked or extreme limitations—in all four Paragraph B areas of mental functioning. (AR at 20–21.) Plaintiff now argues that Judge Costa "failed to cite to any specific medical evidence from any treating source aside from 'cherry picking' mental health progress notes" in order to support his moderate determinations. (Pl. Br. at 17.) In support of this contention, Plaintiff cites to a variety of testimony and other medical evidence that he claims supports more significant limitations. For example, Plaintiff explains that Sean testified to his experience with "depression and anxiety symptoms," a "severe manic episode," "severe and debilitating fatigue," and "frequen[t] panic attacks." (*Id.* at 18–19 (citing AR at 45–48).) Plaintiff also cites to a variety of medical evidence from Dr. Williamson, who reported that Sean was "noticeably anxious, sad, down, and despondent," (*id.* (citing AR at 482)), and from PA Balint, who concluded that Plaintiff would have "noticeable difficulty" "remembering work-like procedures, maintaining regular attendance, being punctual" and "sustain[ing] a normal routine," (*id.* at 20 (citing AR at 646)).

Ultimately, Sean appears to be emphasizing aspects of helpful testimony and evidence culled from the record while failing to cite contrary evidence. Assuming *arguendo* the existence of evidence in the record which arguably supports a finding of a marked or extreme limitation in one of the Paragraph B categories, "[t]he ALJ's decision may not be set aside merely because [a

13

reviewing court] would have reached a different decision." *See Cruz*, 244 F. App'x at 479 (citing *Hartranft*, 181 F.3d at 360); *see also Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986) ("While there is other evidence in the record that could support a finding of disability . . . , [the Court's] inquiry is not where the ALJ *could have* reasonably made a different finding based on this record. Rather, we must review whether the ALJ's *actual findings* are supported by substantial record evidence." (emphasis added).).

To be clear, notwithstanding that Judge Costa did not cite every single piece of evidence that Plaintiff relies on in his briefing, the ALJ's determination was nonetheless supported by substantial evidence. *See Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 88 (3d Cir. 2015) ("[A]n ALJ is not required to cite every piece of evidence in the record.") As described at length above, the ALJ reviewed a variety of medical evidence, paying special attention to Sean's own complaints and weighing them accordingly. (*See, e.g.*, AR at 20–21 (citing Plaintiff's endorsements of problems with memory, following instructions, getting along with his wife, paying attention for more than a couple of minutes, and handling stress or changes in routine).) Judge Costa also cited to ample record evidence supporting Sean's various limitations. (*See, e.g.*, *id.* (referencing noticeable anxiety and tremors, his "slightly disheveled" appearance, problems with mood, and "fair-poor insight" with "loose" thought process).) Nonetheless, Judge Costa ultimately concluded that Plaintiff's limitations were not quite as severe as his own complaints would suggest. This conclusion was well within the ALJ's purview to decide and not within this Court's jurisdiction to re-weigh or supersede. *Chandler*, 667 F.3d at 359. Accordingly, the Court will not disturb Judge Costa's Paragraph B findings.

**B.    MEDICAL OPINIONS**

When making a disability determination, an ALJ must review and evaluate all medical opinions that are part of the record. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). However, not all medical opinions are created equal, or assessed equally. It is the sole province of the ALJ to consider medical opinions, determine how persuasive each medical opinion is, and articulate the persuasiveness of each opinion as part of the written determination. *See Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 913 (3d Cir. 2014) (citing 20 C.F.R. § 416.927).

Social Security regulations require the Commissioner to consider the following factors when evaluating all[7] medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating relationship, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c).

The regulations emphasize that "the most important factors" for the ALJ and Commissioner to consider when evaluating the persuasiveness of medical opinions are the factors of supportability and consistency. *Id.* at §§ 404.1520c(a). Accordingly, "[a]dministrative judges must always discuss . . . supportability and consistency." *Zabrowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). "Supportability is the extent to which the medical source's opinion

---

[7] Before 2017, opinions by treating medical sources—like PA Balint—were automatically given more weight than those by non-treating sources, otherwise known as the "treating source rule." *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . ."). This is no longer the legal framework in social security cases, and has been replaced by the factors described hereinabove.

is supported by relevant objective medical evidence and explanations presented by the medical source." *Carolyn N. v. Comm'r of Soc. Sec.*, No. 22-4957, 2023 WL 8271767, at *5 (D.N.J. Nov. 30, 2023) (quotation omitted). "[C]onsistency is the extent to which the medical source's opinion is consistent with the record as a whole." *Id.* (quotation omitted).

When an ALJ evaluates a medical opinion, he is not required "to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see also Zambrowski*, 155 F.4th at 639 ("[A] judge need not reiterate the magic words 'support' and 'consistent' for each doctor."). Instead, the Court must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. What's more, "[t]he statute requires administrative judges to explain only the dispositive reasons for their decisions, not everything else that they considered." *Zabrowski*, 115 F.4th at 639.

This evaluation requirement does not apply to all *evidence*, just medical *opinions*. Relevant regulations illustrate the difference between the two: objective medical *evidence* is "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1). Most documents in the record from medical providers fall into this category. A medical *opinion*, on the other hand, is "a statement from a medical source about what [a plaintiff] can do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions." *Id.* § 404.1513(a)(2). "While an ALJ obviously must consider medical records in rendering his decision, '[o]nly those statements within the records that reflect *judgments* regarding a claimant's prognosis or limitations, or the severity of symptoms, constitute medical opinions' subject to the procedural requirements of 20 C.F.R. § 404.1527(c)." *Hawley v. Colvin*, No. 13-296, 2014 WL 3747686, at *7 n.3 (W.D. Pa. July 29, 2014) (alteration in original) (emphasis added).

The parties agree that PA Balint provided a medical opinion for Judge Costa's consideration. (Pl. Br. at 24; Def. Opp. at 14.) Plaintiff suggests that Dr. Williamson provided a medical opinion too and argues that "the ALJ did not provide any indication or analysis as to whether he found Dr. Williamson's conclusions" to be persuasive pursuant to the regulatory scheme. (Pl. Br. at 23.) Contrary to Plaintiff's argument, however, the ALJ did not need to evaluate the persuasiveness of Dr. Williamson's conclusions because he did not submit any medical opinion—just medical evidence.

As Judge Costa explained, Sean saw Dr. Willaimson for an evaluation on January 3, 2023. (AR at 26.) The document from Plaintiff's visit with Dr. Williamson spans just two substantive pages and includes a reason for referral, some relevant background information based solely on Plaintiff's own representations, a single paragraph on "mental status and behavioral observations," and diagnoses. (*Id.* at 481–82.) As a "[c]onclusionary" comment, Dr. Williamson stated that Sean "is competent to handle his own funds at the present time," but made no other averments as to Sean's ability to work. (*Id.* at 482.) Dr. Williamson did not opine that Sean had any "impairment-related limitations or restrictions." *See* 20 C.F.R. § 404.1513(a)(2). Clearly, Dr. Williamson's report is mere medical *evidence*—his own notes, observations, and recounting of the evaluative session. Accordingly, because Dr. Williamson did not provide a medical *opinion*, Judge Costa did not err in not discussing its persuasiveness.

The only medical opinion evaluation that Sean properly challenges is that of PA Balint.[8] PA Balint opined that Plaintiff was "[u]nable to meet competitive standards" in a litany of areas including: maintaining regular attendance; sustaining an ordinary routine without special

---

[8] Judge Costa also evaluated the opinion of Dr. Adalisse Borges, DDS consultant and found it persuasive (*see* AR at 28 (citing *id.* at 69–71)), but Plaintiff does not contest this evaluation. (*See* Pl. Br. at 23.)

supervision; making simple work-related decisions; completing a normal workday and work-week without interruptions; performing at a consistent pace without an unreasonable number and length of rest periods; and dealing with normal stress. (AR at 646.) Judge Costa found this opinion to be "not entirely persuasive." (*Id.* at 29)

To be clear, it is not the Court's function to second-guess or substitute its judgment for that of the factfinder ALJ, but rather to ensure, consistent with its limited, circumscribed role, that the findings are supported by substantial evidence in the record. *See Fargnoli,* 247 F.3d at 38. Here, Judge Costa properly applied the correct legal framework when evaluating the persuasiveness of PA Balint's medical opinion and appropriately articulated his findings as to both supportability and consistency.

As for supportability, Judge Costa determined that although PA Balint opined that Plaintiff would be unable to meet competitive standards in areas like remembering work-like procedures, dealing with normal work stress, sustaining an ordinary routine, and maintaining regular attendance (*see* AR at 646), her own prior "treatment records are consistent with only *moderate* limitations." (*Id.* at 29 (citing *id.* at 454–480, 491–643).) Indeed, by way of example, PA Balint's own records from an October 2023 evaluation indicate that Sean was "feel[ing] like [him]self again," exhibited "[s]lightly improved motivation," was "[l]ooking forward to things," and denied feelings of "distractibility." (*See id.* at 500.) Additionally, in August 2023, Sean reported: "Things are better for sure." (*Id.* at 516.) Judge Costa noted in particular that, contrary to PA Balint's opinion, Sean's condition reportedly improved when "switching from Ambilify to lithium." (*Id.* at 29.) As Judge Costa concluded, PA Balint's medical records may have supported moderate limitations, but belied a finding of the required marked or severe limitations so as to render Sean disabled. (*Id.*)

Similarly, the ALJ considered consistency by referencing the evidence of the record and citing—throughout his decision—the many pages of medical evidence supporting more moderate limitations than what PA Balint opined. (*See id.* at 29 ("[T]he evidence of record supports no greater limitations than assessed in this decision."); *Jones*, 364 F.3d at 505 (ALJ decision should be read "as a whole"). For instance, the ALJ noted Dr. Williamson's determination that Sean could complete a variety of mathematical calculations and memory tests (AR at 26 (citing *id.* at 482)), Dr. Vekhnis's observation that Sean successfully name capitals of the United States and New Jersey, spell words backwards, do multiplications, and even "interpret[] proverbs in an abstract way" (*id.* (citing *id.* at 485–86)), and Dr. Borges's opinion that Sean could understand, remember and carry out simple instructions while being only moderately limited in interacting appropriately with general public (and not significantly limited in terms of other interactions) (*id.* at 28 (citing *id.* at 69–70)). By relying heavily on other medical evidence and opinions, with extensive citations to the record, and due consideration to them in his evaluation of PA Balint's opinion, the ALJ satisfied the requirement to analyze consistency. *See Zambrowski*, 115 F.4th 639 (affirming the Commissioner's decision where "the administrative judge did weave supportability and consistency throughout her analysis of which doctors were persuasive"). Accordingly, the Court finds no error in Judge Costa's consideration of medical opinions.

### C.    VE TESTIMONY

Finally, Plaintiff characterizes the VE's testimony regarding the availability of jobs based on Plaintiff's RFC as "inconsistent" and "contradictory." (Pl. Br. at 26.) Accordingly, Plaintiff argues, Judge Costa improperly found at Step Five that Sean was not disabled. (*Id.* at 28.)

At Step Five, an ALJ must consider the assessment of the plaintiff's RFC along with his age, education, and work experience, to see if there are other jobs in the national economy that the

plaintiff could complete. *See* 20 C.F.R. § 404.1520(a)(4)(v). "Advisory testimony from a vocational expert is often sought by the ALJ for that purpose . . . ." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205–06 (3d Cir. 2008) (quoting *Rutherford*, 399 F.3d at 551). To elicit such testimony, the ALJ will pose a series of hypotheticals to the VE, and "the hypotheticals posed must 'accurately portray' the claimant's impairments and [] the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Id.* (alteration in original) (quoting *Rutherford*, 399 F.3d at 554); *see also Rutherford*, 399 F.3d at 554 ("We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant.").

At the hearing, the ALJ asked the VE whether Plaintiff could do any jobs in the national economy based on a hypothetical that included, *inter alia*, that the individual "could have only occasional interaction with the general public, coworkers and supervisors." (AR at 53.) The VE testified that Plaintiff could not perform his past work as a music retail supervisor under those conditions, but could work as a floor waxer, hand packager, or marker for retail trade. (*Id.* at 53–54.) The ALJ then modified the hypothetical RFC, asking:

> Q: [I]f I were to modify the first hypothetical to indicate that the individual, let's say, could have no direct contact with the general public and will be unable to work in tandem with coworkers such as on an assembly line, would any of the jobs that you provided still exist?
>
> A: Yes. I believe all of those would still exist.
>
> Q: Thank you. And then if I were to further add that the individual would be able to perform work only where production is measured at the end of the day and not throughout the course of the day, would any representative jobs that you provided still exist?
>
> A: Yes, I believe these jobs would still exist.

(*Id.* at 54.) When Plaintiff's counsel had an opportunity to question the VE, the question posed, which is compound and confusing, misstated the premise of the ALJ's hypothetical:

> Q: If occasional contact with supervisors as per the first hypothetical could only occur at the end of the shift but for the remainder of the day, the other two-thirds of the workday, the individual would not be able to tolerate or respond appropriately to any criticism or contact with supervisors, would that render the individual unemployable in the competitive job market?
>
> A: Yes, I believe it would.

(*Id.* at 56.) In relevant part, the final RFC upon which Judge Costa based his opinion included: "The claimant can have no direct contact with the general public, and occasional interaction with co-workers and supervisors . . . [and] can only perform work where production is measured at the end of the day and not throughout the course of the day . . . ." (*Id.* at 22.)

Plaintiff argues that these answers are contradictory—the VE testified that Plaintiff *could* be employed if he only had occasional contact with his supervisors but also testified that Plaintiff *could not* be employed if he went two-thirds of his day (other than the end of the day) without contact with his supervisor. (Pl. Br. at 26.) Plaintiff avers that these two answers evidence a "concession and admission by the [VE] . . . [that] was not analyzed or explained by the ALJ at all." (*Id.*)

By misconstruing the relevant question and answers, Plaintiff arrives at an incorrect conclusion. To be clear, the ALJ's questioning of the VE elicited two responses that were incorporated into the RFC. *First*, the VE testified under the assumption that Plaintiff could have occasional interaction with supervisors. (AR at 53.) *Second*, the VE testified under the assumption that Plaintiff could have his production measured at the end of the day, rather than throughout the day. (*Id.* at 54.) This does not mean that Plaintiff would only be able to have contact with his supervisor at the end of the day. Indeed, consistent with these answers, Plaintiff could have limited contact with his supervisor throughout the day, even at regular intervals, and then have his production assessed (either by contact with a supervisor or otherwise) at the end of the day.

Plaintiff's questioning of the VE introduced an entirely new scenario in which *all* of Plaintiff's interactions with his supervisor would *need* to happen at the end of the day. (*Id.* at 56.) The VE testified that Plaintiff could not be employed under this restriction. Taking this response into account, the ALJ did not write in the RFC that Plaintiff could only speak to his supervisor at the end of the day; the ALJ only concluded that (1) Plaintiff could only have occasional contact with his supervisor, and (2) Plaintiff's production could only be measured at the end of the day. Plaintiff's own flawed hypothetical reasonably was not incorporated into the final RFC, and clearly was not contradicted by the VE's testimony.

Plaintiff's reliance on *Daniel W. v. Kijakazi* is inapposite. *See* No. 21-27005, 2022 WL 1639009 (D.N.J. May 24, 2022). In *Daniel W.*, the ALJ asked the VE whether the Plaintiff could work if he only had occasional interaction with supervisors. *Id.* at *5. The VE responded in the affirmative. *Id.* Plaintiff's counsel then questioned the VE, asking: "Two-thirds of the day they would not be capable of interacting with supervisors, could that interfere with the performance of any of the jobs indicated?" *Id.* (cleaned up). The VE responded, "If they were not capable of interacting with supervisors two thirds of the day, it would." *Id.* (cleaned up). The court held that the vocational expert's testimony was "contradictory: the expert first testified that jobs were available to a hypothetical individual who could interact with supervisors one-third of the day, but then testified that a hypothetical individual who would be unable to interact with supervisors two-thirds of the day could not work." *Id.*

Here, the Court is not confronted with the same situation. In *Daniel W.*, counsel for Plaintiff merely asked the *inverse* of what the ALJ had already asked, without introducing any new facts. Here, however, Sean's counsel introduced a new temporal hypothetical to which the VE had not previously testified—where Sean could only have contact with a supervisor *at the end* of the day.

(AR at 56.) Moreover, *Daniel W.* does not stand for the proposition that a plaintiff can *never* be restricted to only occasional contact with supervisors; indeed, such an RFC is regularly crafted and upheld on appeal. *See, e.g., Torres v. Comm'r of Soc. Sec.*, No. 14-6178, 2015 WL 8328346, at *6–7 (D.N.J. Dec. 8, 2015) ("[C]ourts routinely find that an individual can perform unskilled work in the national economy, despite a limitation to only occasional interaction with coworkers, supervisors, and the public."). Accordingly, Plaintiff's third and final ground for appeal is without merit.

Judge Costa's thorough and meticulous explication of the record evidence, combined with his detailed analysis of both Plaintiff's subjective allegations and objective medical records, demonstrate that his finding of non-disability is supported by substantial evidence.

## CONCLUSION

Having reviewed the record as a whole, the decision of the Commissioner is **AFFIRMED**. An appropriate Order accompanies this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: October 8, 2025

24